IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. _OY-811_ |
| | : | |
| v. | : | 18 U.S.C. § 371 |
| | : | 18 U.S.C. § 287 |
| IRMA AZRELYANT, | : | 18 U.S.C. § 1349 |
| JOSHUA FINKLE, | : | 18 U.S.C. § 1341 |
| NATAN ZFATI, | : | 18 U.S.C. § 2 |
| OKSANA STRUSA, | : | 18 U.S.C. § 982 |
| ALFIA ISKANDAROVA and | : | |
| HENNADII HOLOVKIN, | : | **INDICTMENT** |
| | : | |
| Defendants. | : | |

RECEIVED
T. WALSH, CLERK

2009 OCT 27 P 2: 25

The Grand Jury, in and for the District of New Jersey, sitting at Camden, charges:

## General Allegations

At all times relevant to this Indictment:

1.    The Americans with Disabilities Act ("ADA") required that each common carrier providing telephone voice transmission services provide Telecommunications Relay Services ("TRS") in the area in which it offered services so that deaf and hard of hearing individuals could communicate with hearing individuals "in a manner that is functionally equivalent to . . . voice communication services."  A nationwide TRS program began in 1993.  Video Relay Service ("VRS") was a specific type of TRS.

2.    VRS was an online video translation service that allowed people with hearing disabilities to communicate with hearing individuals online through the use of interpreters and web cameras.  A person with a hearing disability could

communicate with a hearing person by contacting a VRS provider through an audio and video internet connection. The VRS provider, in turn, employed a Video Interpreter ("VI") to view and interpret the hearing disabled person's signed conversation and relay the signed conversation orally to a hearing person. VRS also allowed a hearing person to initiate contact with a hearing disabled person through a VI.

3.    TRS, including VRS, was funded by fees assessed by the Federal Communications Commission ("FCC") on all common carriers providing interstate telecommunications services. The fees were generally passed on to consumers through charges included in consumers' telephone bills. The fees were deposited in the TRS Fund.

4.    The TRS Fund was established by the FCC in 1993 as the mechanism for collecting and disbursing TRS funds. The National Exchange Carrier Association ("NECA") was responsible for, among other things, administering the TRS Fund.

5.    VRS providers were eligible to be reimbursed from the TRS Fund for their legitimate services. The TRS Fund reimbursed VRS providers at the rate of approximately $6.73 per minute (or approximately $403.80 per hour) for the first 50,000 minutes billed in any given month, approximately $6.46 per minute (approximately $387.60 per hour) for minutes 50,001 through

500,000, and approximately $6.26 per minute (approximately
$375.60 per hour) for all minutes over 500,000.

### Defendants and Relevant Entities

6.    NECA was a non-profit association that administered the
TRS Fund.  This function included collecting carriers' annual
contributions, receiving claims for reimbursement from VRS
providers and making payments on behalf of the FCC to VRS
providers for these claims.  NECA was headquartered in Whippany,
New Jersey, in Morris County.

7.    VRS providers that were authorized by the FCC to
receive payment for VRS would submit their monthly claims and
requests for payment along with the required backup documentation
to NECA and would be paid out of the TRS Fund, a function that
the FCC contracted to NECA.  NECA required that VRS providers
include call detail records for each billed call, which included
the date, time and call duration.  NECA additionally requested
that providers submit originating phone number or IP address and
the destination number with the call detail records.  An IP
address identifies the computer from which the caller is calling.
Because VRS calls were made over the internet, the IP address of
the caller was generally used as the identifier for record-
keeping purposes.

8.    Company 1 was a certified VRS provider based in Flint,
Michigan.  Company 1 provided VRS through its own call centers

and also contracted with outside entities to operate VRS call centers. The minutes from the contracted call centers were billed by Company 1 to NECA with the payments for those calls divided between Company 1 and the contracted call center. In 2008, Company 1 was paid more than $38.7 million for VRS services purportedly provided by Company 1 and its contracted call centers.

9. Company 2 was a Delaware corporation established in 2005 and was headquartered in Rockville, Maryland. Company 2 operated call centers, or subcontracted to others the operation of call centers in, among other places: New York, New York; Colonia, New Jersey, in Middlesex County; Miami Lakes, Florida; Kendall, Florida; Rockville, Maryland; Towson, Maryland; Baltimore, Maryland; Austin, Texas; Las Vegas, Nevada; and Phoenix, Arizona. Company 2 was not a certified VRS provider that could bill directly to NECA. Instead, Company 2 billed NECA through Company 1. In 2008, Company 2 was responsible for more than half of the VRS minutes billed by Company 1.

10. Deaf and Hard of Hearing Interpreting Services, Inc. ("DHIS") was a business registered in New York as a Domestic Business Corporation. The company registered its principal address with the New York Department of State, Division of Corporations as 275 Seventh Avenue, Suite 1507, New York, NY 10001. DHIS operated a VRS call center out of the above New York

address.  DHIS also operated a VRS call center located in Colonia, New Jersey, in Middlesex County.

11.  Defendant IRMA AZRELYANT, a co-owner of DHIS, directed the daily operations of DHIS's VRS business, and was responsible for the bookkeeping at DHIS.

12.  Defendant JOSHUA FINKLE, a co-owner of DHIS, also directed the daily operations of DHIS's VRS business.

13.  Defendant NATAN ZFATI was a Hebrew language VI at DHIS.

14.  Defendant OKSANA STRUSA assisted AZRELYANT with the bookkeeping and helped coordinate the Hebrew and Russian language VIs.

15.  Defendant ALFIA ISKANDAROVA was a Russian language VI at DHIS.

16.  Defendant HENNADII HOLOVKIN was a Russian language VI at DHIS.

## COUNT 1
### (Conspiracy to Defraud the United States and to Cause the Submission of False Claims: 18 U.S.C. § 371)

17.   The allegations contained in paragraphs 1 through 16 of this Indictment are repeated and realleged as if fully set forth herein.

18.   From in or about October 2007 through in or about July 2009, the exact dates being unknown to the Grand Jury, in the District of New Jersey and elsewhere, defendants

**IRMA AZRELYANT,**
**JOSHUA FINKLE,**
**NATAN ZFATI,**
**OKSANA STRUSA,**
**ALFIA ISKANDAROVA and**
**HENNADII HOLOVKIN,**

and others known and unknown to the Grand Jury, did willfully, that is with the intent of furthering the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other to defraud the United States and agencies thereof and to commit offenses against them, to wit:

(A)   to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Federal Communications Commission and its agents in their administration of the Telecommunications Relay Services Fund, in violation of Title 18, United States Code, Section 371;

6

(B)   to defraud the United States of and concerning its
right to have its officers and employees, and particularly the
personnel and agents of the Federal Communications Commission,
free to transact the official business of the United States
unhindered, unhampered, unobstructed and unimpaired by the
exertion upon them of dishonest, corrupt, unlawful, improper and
undue pressure and influence, in violation of Title 18, United
States Code, Section 371; and

(C)   to commit an offense against the United States by
making and presenting to any department or agency of the United
States, a false, fictitious, and fraudulent claim upon or against
the United States, or any department or agency thereof, in
violation of Title 18, United States Code, Section 287.

## Object of the Conspiracy

19.   It was an object of the conspiracy for defendants
AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN, and
others, to unlawfully enrich themselves by submitting and causing
the submission of false and fraudulent claims to NECA for
reimbursement for VRS calls that the defendants knew to be false
and fraudulent.

## Manner and Methods of the Conspiracy

20.   The manner and methods by which defendants AZRELYANT,
FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN, and others,

sought to accomplish the object of the conspiracy included, among others, the following:

21.  Defendants AZRELYANT and FINKLE, through their company DHIS, would provide VRS call center services for Company 2 in return for payment to DHIS of approximately $2.25 per call minute that was billed to NECA.

22.  Defendants AZRELYANT and FINKLE would begin providing VRS services for Company 2 in or about October 2007.

23.  Defendants AZRELYANT and FINKLE would process illegitimate VRS calls for the purpose of generating VRS minutes that would be billed to NECA and that would generate millions of dollars in revenue for DHIS and Company 2.

24.  Defendants AZRELYANT and FINKLE would hire ZFATI as a Hebrew language VI and ISKANDAROVA and HOLOVKIN as Russian language VIs.

25.  Defendants AZRELYANT and FINKLE would hire STRUSA as a bookkeeper for DHIS and STRUSA would work closely with the Russian and Hebrew language VIs.

26.  Defendants AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN would make, would instruct others to make, and would process through DHIS, false and fraudulent "r calls" or "rest calls," which were calls made for the sole purpose of generating illegitimate VRS minutes for which NECA would be billed.  For example, defendants AZRELYANT, FINKLE,

ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN would instruct others to make, and would process through DHIS, calls to podcasts - which were prerecorded messages, for example, a recording of a radio program or a person reading a novel - in which callers would routinely instruct the VIs not to actually interpret the calls, allowing the VIs to "rest."

27. Defendants AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN would recruit family and friends to make fraudulent "rest calls" for and through DHIS and would cause DHIS to pay these callers approximately $10 an hour.

28. Defendants AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN would instruct these paid callers to make calls through Company 2's Hebrew or Russian service to ensure that the paid callers would be routed to one of the defendants, who would then connect the caller to a call made for the sole purpose of generating VRS minutes for DHIS.

29. Defendants AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN would instruct the paid callers to track the duration of their illegitimate VRS calls, and the defendant or defendants processing the paid run calls would also track the duration of paid callers illegitimate VRS calls.

30. Defendant STRUSA would then reconcile the record from the paid callers with the record from the defendants and determine how much each paid caller earned for making fraudulent

VRS calls.  The callers would be paid every two weeks by check through DHIS.

31.  Defendants AZRELYANT and FINKLE would, however, pay ZFATI his VI wage in cash.

32.  Defendants AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN would cause DHIS to submit claims to NECA totaling approximately 130,800 VRS call minutes for the month of October 2008, at a total cost of approximately $850,200 to the TRS Fund, which would include the false and fraudulent rest calls that they processed.

33.  Defendants AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN would cause DHIS to submit claims to NECA totaling approximately 99,100 VRS call minutes for the month of November 2008, at a total cost of approximately $644,150 to the TRS Fund, which would include the false and fraudulent rest calls that they processed.

34.  Defendants AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN would cause DHIS to submit claims to NECA totaling approximately 1.9 million VRS call minutes for the time period of in or about October 2007 through in or about June 2009, at a total cost of approximately $12,350,000 to the TRS Fund, which would include the false and fraudulent rest calls that they processed.

## Overt Acts

35.  In furtherance of the conspiracy, and to accomplish its object, at least one of the conspirators committed, or caused to be committed, in the District of New Jersey, and elsewhere, the following overt acts, among others:

36.  On or about August 10, 2007, defendants AZRELYANT and FINKLE signed a contract with Company 2 stating that DHIS would provide VRS call center services in return for $2.25 per VRS call minute.

37.  On or about November 26, 2008, defendants AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN caused the mailing of a package, via the United States Postal Service, to NECA in Whippany, New Jersey, in Morris County, that contained the call detail records that supported Company 1's request for payment for VRS services for October 2008.  These records included call detail records for the fraudulent calls DHIS generated and processed in October 2008.

38.  On or about January 20, 2009, defendants AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN caused the mailing of a package, via UPS Express, to NECA in Whippany, New Jersey, in Morris County, that contained the call detail records that supported Company 1's request for payment for VRS services for November 2008.  These records included call detail records

for the fraudulent calls DHIS generated and processed in November 2008.

39.   On or about July 8, 2008, a VRS call of approximately 45 minute duration was made from IP address 67.152.24.77 to a podcast at (415) 376-7291, which call was submitted to NECA for reimbursement on August 12, 2008.

40.   On or about October 11, 2008, a VRS call of approximately 39 minute duration was made by user ID "JFinkle33" to a podcast at (712) 318-9833, which call was submitted to NECA for reimbursement on November 14, 2008.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-3
### (Submission of False Claims: 18 U.S.C. §§ 287 and 2)

41. The allegations contained in paragraphs 1 through 16 and 19 through 40 of this Indictment are repeated and realleged as if fully set forth herein.

42. On or about the dates enumerated below, in the District of New Jersey and elsewhere, defendants

### IRMA AZRELYANT and
### JOSHUA FINKLE,

and others known and unknown to the Grand Jury, did make and present and cause the making and presenting to a person or officer in the civil, military, and naval service of the United States, and to a department or agency thereof, the following claims upon and against the United States, and a department or agency thereof, knowing such claims to be false, fictitious, and fraudulent:

| Count | Defendants | On or about Claim Date | Description of the Call |
|-------|-----------|------------------------|-------------------------|
| 2 | AZRELYANT and FINKLE | 8/12/2008 | Approximately 45 minute duration VRS call from IP address 67.152.24.77 to a podcast at (415) 376-7291, made on or about July 8, 2008 |
| 3 | AZRELYANT and FINKLE | 11/14/2008 | Approximately 39 minute duration VRS call from "JFinkle33" to a podcast at (712) 318-9833, made on or about October 11, 2008 |

In violation of Title 18, United States Code, Sections 287 and 2.

13

**COUNT 4**
**(Conspiracy to Commit Mail Fraud: 18 U.S.C. § 1349)**

43.    The allegations contained in paragraphs 1 through 16 and 19 through 40 of this Indictment are repeated and realleged as if fully set forth herein.

44.    From in or about October 2007 through in or about July 2009, the exact dates being unknown to the Grand Jury, in the District of New Jersey and elsewhere, defendants

**IRMA AZRELYANT,**
**JOSHUA FINKLE,**
**NATAN ZFATI,**
**OKSANA STRUSA,**
**ALFIA ISKANDAROVA and**
**HENNADII HOLOVKIN,**

and others known and unknown to the Grand Jury, did willfully, that is with the intent of furthering the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other to commit an offense against the United States, that is, to violate Title 18, United States Code, Section 1341, by placing and causing to be placed in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or depositing and causing to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or taking and receiving therefrom, any such matter or thing, or knowingly causing to be delivered by mail or such carrier according to the direction thereon, or at the place

14

at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing.

    All in violation of Title 18, United States Code, Section 1349.

## COUNTS 5-6
### (Mail Fraud: 18 U.S.C. §§ 1341 and 2)

45.  The allegations contained in paragraphs 1 through 16 and 19 through 40 of this Indictment are repeated and realleged as if fully set forth herein.

46.  On or about the respective dates shown below, each such date constituting a separate count of this Indictment, within the District of New Jersey, and elsewhere, defendants

**IRMA AZRELYANT,**
**JOSHUA FINKLE,**
**NATAN ZFATI,**
**OKSANA STRUSA,**
**ALFIA ISKANDAROVA and**
**HENNADII HOLOVKIN,**

and others known and unknown to the Grand Jury, for the purposes of executing the scheme and artifice to defraud described above and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, did knowingly: (a) place and cause to be placed in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the Postal Service; (b) deposit and cause to be deposited any matter and thing whatever to be sent and delivered by any private and interstate commercial carrier; and (c) cause to be delivered by mail and private and interstate commercial carrier any matter and thing whatever according to the direction thereon, the following:

| Count | Defendants | On or About Mailing Dates | Description of the Mailing |
|-------|-----------|---------------------------|----------------------------|
| 5 | AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN | 11/26/2008 | Package containing call detail records that supported Company 1's request for payment for VRS services for October 2008 delivered via the United States Postal Service to NECA in Whippany, New Jersey, Morris County |
| 6 | AZRELYANT, FINKLE, ZFATI, STRUSA, ISKANDAROVA and HOLOVKIN | 1/20/2009 | Package containing call detail records that supported Company 1's request for payment for VRS services for November 2008 delivered via UPS Express to NECA in Whippany, New Jersey, Morris County |

In violation of Title 18, United States Code, Sections 1341 and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

47.    The allegations contained in Counts 1-6 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, IRMA AZRELYANT, JOSHUA FINKLE, NATAN ZFATI, OKSANA STRUSA, ALFIA ISKANDAROVA and HENNADII HOLOVKIN have an interest in pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

48.    Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of IRMA AZRELYANT, JOSHUA FINKLE, NATAN ZFATI, OKSANA STRUSA, ALFIA ISKANDAROVA and HENNADII HOLOVKIN for any of the offenses charged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense or any property real or personal which was involved in the offense or any property traceable to such property.  Such forfeiture shall include, but not be limited to a money judgment in the amount of the gross proceeds of the fraud.

49.    If the property described above as being subject to forfeiture, as a result of any act or omission of IRMA AZRELYANT, JOSHUA FINKLE, NATAN ZFATI, OKSANA STRUSA, ALFIA ISKANDAROVA and HENNADII HOLOVKIN

18

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to or deposited with a
      third person;

(c)   has been placed beyond the jurisdiction of the Court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be
      subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), as made applicable through

Title 18, United States Code, Section 928(b)(1), to seek

forfeiture of any other property of IRMA AZRELYANT, JOSHUA

FINKLE, NATAN ZFATI, OKSANA STRUSA, ALFIA ISKANDAROVA and

HENNADII HOLOVKIN up to the value of the above forfeitable

property.

All pursuant to Title 18, United States Code, Section

982(a)(7) and the procedures set forth at Title 21, United States

Code, Section 853, as made applicable through Title 18, United

States Code, Section 982(b)(1).


                                A TRUE BILL



                                _FOREPERSON_ /


STEVEN A. TYRRELL
CHIEF, FRAUD SECTION


Hank Walther
Assistant Chief, Fraud Section

Brigham Cannon
Trial Attorney, Fraud Section

CASE NUMBER:

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

v.

IRMA AZRELYANT,
JOSHUA FINKLE,
NATAN ZFATI,
OKSANA STRUSA,
ALFIA ISKANDAROVA and
HENNADII HOLOVKIN

# INDICTMENT FOR

18 U.S.C. § 371
18 U.S.C. § 287
18 U.S.C. § 1349
18 U.S.C. § 1341
18 U.S.C. § 2
18 U.S.C. § 982

A True Bill.

STEVEN A. TYRRELL
CHIEF, FRAUD SECTION
WASHINGTON, DISTRICT OF COLUMBIA

HANK WALTHER
ASSISTANT CHIEF, FRAUD SECTION
BRIGHAM CANNON
TRIAL ATTORNEY, FRAUD SECTION
UNITED STATES DEPARTMENT OF JUSTICE
202.307.0593